UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:14-CR-107 |
| | ) | |
| BRIAN EDWARD HAWKINS | ) | |

**MEMORANDUM AND ORDER**

This criminal case is before the Court on the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i), as supplemented. [Docs. 620-621]. The United States has responded in opposition [docs. 638-639] and the defendant has not replied within the time allowed by this Court's Local Rules.

Also before the Court are the defendant's *pro se* motion for early release [doc. 616] and his *pro se* "Motion for Clarification of Sentence" [doc. 573]. For the reasons that follow, each of the defendant's three motions will be denied.

## I. BACKGROUND

In December 2015, the Honorable Pamela L. Reeves sentenced the defendant to a 99-month term of imprisonment for conspiring to distribute, and possess with the intent to distribute, a-PVP. The defendant is presently incarcerated at USP Terre Haute, a high-security penitentiary, with a projected release date of June 24, 2025. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Nov. 17, 2021). He now moves for compassionate release in light of the COVID-19 pandemic, cirrhosis of the liver, hepatitis C, PTSD, and his rehabilitative efforts. He also argues that Judge Reeves could or would

have imposed a lesser sentence had she been able to predict the COVID-19 pandemic.[1]

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

---

[1] The defendant also raises issues pertaining to his conditions of confinement. Such claims might be cognizable, *see, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in the prisoner's district of confinement after the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(a). There is no evidence that this defendant has exhausted his administrative remedies on those claims, nor is he incarcerated in this judicial district.

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[2] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

## A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 620]. The Court thus finds that it has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

## B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, cirrhosis of the liver, hepatitis C, PTSD, and his rehabilitative efforts. He also argues that Judge Reeves could or would have imposed a lesser sentence had she been able to predict the COVID-19 pandemic.

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

3

At the defendant's prison, there are currently two staff and 29 inmates positive for COVID-19, with 325 inmates and 174 staff having recovered, and four inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Nov. 17, 2021). These numbers are significant, but the Court simultaneously notes that outside the prison setting our nation remains in crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, at the defendant's prison 443 staff and 1,956 inmates have now been fully vaccinated. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Nov. 17, 2021). The defendant is one of those 1,956 inmates. [Doc. 639].

BOP medical records confirm that the defendant has been diagnosed with, and receives treatment for, major depressive disorder, PTSD, hepatitis C, and mild cirrhosis of the liver. [*Id.*]. Chronic liver disease and mood disorders including depression are conditions which "can" increase the risk of severe illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical

4

-conditions.html (last visited Nov. 17, 2021).

However, as noted, the defendant is now fully vaccinated against COVID-19. The Sixth Circuit Court of Appeals has recently held that, "even recognizing the purported seriousness of his condition," a defendant's

> access to the COVID-19 vaccine substantially undermines his request for a sentence reduction. To that end, we agree with the Seventh Circuit that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (Easterbrook, J.). After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated. To be sure, inmates in some respects face social distancing challenges distinct from those of the general public (although perhaps not entirely unlike students in dorm rooms, individuals in medical and assisted care facilities, and even residents of densely occupied apartment complexes). But to the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19. And at this intersection of law and science, we find wisdom in Judge Easterbrook's assessment that "for people living in close quarters, vaccines offer relief far more effective than a judicial order." *Id.*

*See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021).

Even more recently, the Sixth Circuit issued its published ruling in *United States v. Traylor*, 16 F.4th 485 (6th Cir. 2021). In *Traylor*, the appellant sought compassionate release "due to her various health ailments (e.g., diabetes, sleep apnea, asthma, obesity, being a recent organ transplant recipient, and use of immunosuppressive therapy)." *Id.* The Sixth Circuit "[a]ccept[ed] the serious nature of Traylor's alleged medical conditions" but nonetheless held that her argument was foreclosed by *Lemons*' "holding that 'a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction.'" *Id.* (citing and quoting *Lemons*).

The published holdings in *Lemons* and *Traylor* bind this Court. *See, e.g., Grundy Mining Co. v. Flynn*, 353 F.3d 467, 479 (6th Cir. 2003). As such, the defendant has not carried his burden of showing extraordinary and compelling grounds for compassionate release. For that reason alone, his motion will be denied. *See Elias*, 984 F.3d at 519.

The defendant's additional claims do not impact the Court's conclusion. The defendant cites his post-sentencing rehabilitation but, as will be discussed below, he has not shown that his rehabilitation is as extraordinary as alleged. As to the defendant's argument that Judge Reeves might have imposed a lesser sentence had she been able to foresee COVID-19, the same could be said by most inmates who were sentenced prior to the pandemic. This issue is thus far from extraordinary.

In any event, compassionate release in this case would be inconsistent with the 18 U.S.C. § 3553(a) factors. Pursuant to that statute,

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

6

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

. . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In this case, over the course of approximately one year the defendant conspired to distribute a "conservative estimate" of one kilogram of a-PVP, causing incalculable harm to this region. [Doc. 455, ¶¶ 11-18]. Although this Court did not preside over this particular multi-defendant a-PVP case, it did preside over others and is well-aware of the devastation and mayhem that a-PVP wrought in its heyday.

7

Over the course of his dealings, the defendant earned the trust of one of the area's primary, and notoriously secretive, a-PVP suppliers and was able to deal with him directly. [*Id.*, ¶ 15]. On two occasions during the conspiracy, the defendant fled from law enforcement at high rates of speed. [*Id.*, ¶¶ 16, 21, 69]. A small child was in the vehicle during one of those chases. [*Id.*, ¶¶ 21, 69].

The defendant's criminal history is troubling. There are four juvenile convictions including assault and battery. [*Id.*, ¶¶ 37-40]. Adult convictions span almost 30 paragraphs of the Presentence Investigation Report ("PSR"). [*Id.*, ¶¶ 41-69]. There are convictions for assault (thrice), battery, aggravated assault, domestic assault (in which the defendant pushed the victim to the floor and bit her on the back), controlled substance offenses (two cases), criminal trespassing (twice), contributing to the delinquency of a minor (twice), theft and fraud offenses (nine cases), felony reckless endangerment (twice), harassment, felony evading arrest, and felon in possession of a firearm. [*Id.*, ¶¶ 43-45, 47-56, 59-60, 62-69]. There have been five revocations of probation. [*Id.*, ¶¶ 59-60, 64, 67]. The "Other Criminal Conduct," "Pending Charges," and "Other Arrests" sections of the PSR cover an additional 19 paragraphs, evidencing further extensive contact with law enforcement. [*Id.*, ¶¶ 73-91].

The defendant's filings speak at length about his post-sentencing rehabilitation. However, the only documentation before the Court shows that he has taken 15 hours of educational and behavioral classes and that he continues to pursue his GED. [Doc. 638, Ex. 3]. Conversely, in October 2020 the defendant received a disciplinary sanction for fighting. [*Id.*, Ex. 2].

8

Case 2:14-cr-00107-RLJ-CRW   Document 655   Filed 11/18/21   Page 8 of 10   PageID #: 3658

There is a lengthy history of polysubstance abuse dating back to age 11. [Doc. 455, ¶¶ 102-103]. It is further noted that the majority of the defendant's cited health conditions predate his involvement in the instant conspiracy. [*Id.*, ¶¶ 97, 100-101].

The defendant's criminal history is substantial, his probationary record is poor, and his misconduct has continued during his current incarceration. More than four years of actual time remain on his sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). Compassionate release on the facts of this case would not reflect the seriousness of the offense of conviction and the defendant's broader criminal history, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

### III. ADDITIONAL MOTIONS

In February 2019, the defendant filed a *pro se* "Motion for Clarification of Sentence." [Doc. 573]. Judge Reeves' judgment expressly provides that the federal sentence would be served consecutively to one particular state court sentence, but the judgment is silent as to any other pending state court matters. [Doc. 477]. The defendant now asks the Court to recommend that the BOP credit him for time served on one state sentence which was not addressed in his federal judgment.

This Court has previously addressed such issues in other cases, but only in response to direct inquiry from the BOP. The Court will adhere to that procedure in this case. Should the Court receive inquiry from the BOP, the Court will speak to the issue at that time.
9

There is a lengthy history of polysubstance abuse dating back to age 11. [Doc. 455, ¶¶ 102-103]. It is further noted that the majority of the defendant's cited health conditions predate his involvement in the instant conspiracy. [*Id.*, ¶¶ 97, 100-101].

The defendant's criminal history is substantial, his probationary record is poor, and his misconduct has continued during his current incarceration. More than four years of actual time remain on his sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). Compassionate release on the facts of this case would not reflect the seriousness of the offense of conviction and the defendant's broader criminal history, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

### III. ADDITIONAL MOTIONS

In February 2019, the defendant filed a *pro se* "Motion for Clarification of Sentence." [Doc. 573]. Judge Reeves' judgment expressly provides that the federal sentence would be served consecutively to one particular state court sentence, but the judgment is silent as to any other pending state court matters. [Doc. 477]. The defendant now asks the Court to recommend that the BOP credit him for time served on one state sentence which was not addressed in his federal judgment.

This Court has previously addressed such issues in other cases, but only in response to direct inquiry from the BOP. The Court will adhere to that procedure in this case. Should the Court receive inquiry from the BOP, the Court will speak to the issue at that time.

Also, in October 2020, the defendant moved for early release based solely on his rehabilitative efforts. [Doc. 616]. The defendant cites no statutory authority in support of that motion.

Congress has provided that, in the context of 18 U.S.C. § 3582(c)(1)(A), "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release. 28 U.S.C. § 994(t). Rehabilitation alone therefore is not a basis for relief under the compassionate release statute, and the defendant has identified no other law which would allow his release based solely on post-sentencing conduct. His motion must therefore be denied.

## IV. CONCLUSION

As provided herein, the defendant's pending motions [docs. 573, 616, 620] are **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge